IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JOSEPH REDMON,
Plaintiff,
v.
MASSEY AUTO,
Defendant.

CIVIL ACTION NO. 2:13CV313-SRW

**MEMORANDUM OPINION and ORDER**

Plaintiff Joseph Redmon brings this action against his former employer, Massey Auto ("Massey").[1] Plaintiff claims that the defendant terminated his employment because of his age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Alabama Age Discrimination in Employment Act ("AADEA), Ala. Code § 25-1-20, *et seq*. (Complaint, Counts One and Two). He also asserts state law claims of defamation (id., Counts Three and Four) and intentional infliction of emotional distress (id., Count Five). This action is presently before the court on defendant's motion for summary judgment. (Doc. # 27). Upon consideration of the motion, the court concludes that it is due to be granted in part and denied in part.

**SUMMARY JUDGMENT STANDARD**

A movant is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

---

[1] Defendant answers as "Massey Automotive, Inc.," representing that it is identified incorrectly in the complaint. (Doc. # 8).

Civ. P. 56(a). For summary judgment purposes, an issue of fact is "material" if, under the substantive law governing the claim, its presence or absence might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the movant fails to satisfy its initial burden, the motion for summary judgment will be denied. Kernel Records Oy v. Mosley, 694 F.3d 1294, 1300 (11th Cir. 2012), *cert. den.*, 133 S.Ct. 1810 (2013). If the movant adequately supports its motion, the burden shifts to the opposing party to establish – "by producing affidavits or other relevant and admissible evidence beyond the pleadings" – specific facts raising a genuine issue for trial. Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1315 (11th Cir. 2011); Dietz v. Smithkline Beecham Corp., 598 F.3d 812, 815 (11th Cir. 2010); Fed. R. Civ. P. 56(c)(1)(A). "All affidavits [and declarations] must be based on personal knowledge and must set forth facts that would be admissible under the Federal Rules of Evidence[.]" Josendis, 662 F.3d at 1315; Fed. R. Civ. P. 56(c)(4). The court views the evidence and all reasonable factual inferences in the light most favorable to the nonmovant. Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC, 702 F.3d 1312, 1316 (11th Cir. 2012). However, "'[i]f no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue of material fact and summary judgment will be granted.'" Morton v. Kirkwood, 707 F.3d 1276, 1284 (11th Cir. 2013)(citation omitted).

## DISCUSSION[2]

### Request for Rule 56(d) Relief

Defendant filed its motion for summary judgment on November 20, 2013 (Doc. # 27); plaintiff's response was due on December 11, 2013 (Doc. ## 18, 30). Two days before his response deadline, plaintiff sought an extension of time, citing a death in counsel's family; the court allowed plaintiff until January 6, 2014, to respond to the motion for summary judgment. (Doc. ## 31, 32). On that date, plaintiff filed an "objection" to defendant's motion, in which plaintiff represented that due to his incomplete discovery, his own health issues, and deaths in his attorney's family, he was unable to "present essential facts to justify [his] opposition to the motion." (Doc. ## 33, 33-1). Plaintiff indicated in his objection that "discovery is not complete and is scheduled to be completed by April 4, 2014." (Doc. # 33, ¶ 3). In an order entered the following day, the court explained that plaintiff's affidavit and motion were "not sufficient to warrant an extension pursuant to Rule 56(d)." (Doc. # 34, p. 2)(citing Nawab v. Unifund CCR Partners, 2013 WL 6823109, *2 (11th Cir. Dec. 27,

---

[2] As it is required to do, the court has viewed the evidence presented on the motion for summary judgment in the light most favorable to the plaintiff. Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992). Additionally, the court considers any evidentiary objection that is not raised expressly to have been waived. Fed. R. Civ. P. 56(c)(2), (e)(2); see also Munoz v. International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of U.S. and Canada, 563 F.2d 205, 214 (5th Cir. 1977)("Inadmissible material that is considered by a district court without challenge may support a summary judgment. Here there was no timely objection and it is deemed waived."); Auto Drive-Away Co. of Hialeah, Inc. v. I.C.C., 360 F.2d 446, 448 (5th Cir. 1966)(objection to admissibility of summary judgment exhibits raised for the first time on appeal came "too late," as the party failed to object to the introduction or use of the evidence before the district court).

2013)).[3] Thus, to the extent that plaintiff's "objection" sought relief pursuant to Rule 56(d), the court denied the motion. (Doc. # 32). However, it construed plaintiff's objection to seek an additional extension of time due to plaintiff's counsel's extenuating circumstances, and allowed plaintiff an additional seven weeks, until February 25, 2014, to respond to the motion. (Id.). The court also noted that the discovery deadline was February 11, 2014. (Id., p. 1 n. 1)(citing Doc. # 17, scheduling order).

On February 25, 2014, plaintiff filed a response to the motion for summary judgment. (Doc. # 35). Within this response, plaintiff "objects" to defendant's motion for summary judgment because, *inter alia*, he has "demonstrated by affidavit that due to his incomplete discovery he cannot present essential facts to justify his opposition." (Id. at p. 1 ¶ 4). He asserts, as he did in his previous objection, that "discovery is not complete and is scheduled to be completed by April 4, 2014." (Id. at p. 1 ¶ 3). Plaintiff attaches no new affidavit or declaration to support his renewed request for Rule 56(d) relief, and – as the court pointed out in its January 7, 2014, order – discovery closed in this matter on February 11, 2014, two weeks before the deadline for plaintiff's response. (See Doc. # 17). To be entitled to Rule 56(d) relief, the movant "'must specifically demonstrate how postponement of a ruling on the [summary judgment] motion will enable them, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.'" Nawab, 553 F. App'x. 856, 859 (11th Cir. 2013)(quoting Fla. Power & Light Co. v. Allis Chalmers Corp., 893 F.2d

[3] While plaintiff designates his statement as an affidavit (see Doc. # 33-1, p. 1), it is actually a declaration under penalty of perjury (id., p. 2).

1313, 1316 (11th Cir. 1990))(alteration in Nawab). Plaintiff's present objection provides no grounds justifying Rule 56(d) relief; accordingly, the court will proceed to the merits of defendant's motion for summary judgment.

**Defamation Claims**

Plaintiff asserts two counts of defamation against the defendant, pursuant to Alabama law. (Complaint, Counts Three and Four). Plaintiff alleges that "Defendant made false and defammatory [sic] statements about Mr. Redmon to other employees of Massey Auto and to others." (Doc. # 1, ¶ 59). Plaintiff does not allege the precise nature of the allegedly defamatory statements or the circumstances in which they were made, but he indicates that the statements were "about Mr. Redmon allegedly sexually harassing a female employee[.]" (Id., ¶ 58).

*Communications to Defendant's Employees*

"To establish a *prima facie* case of defamation, a plaintiff must show: [1] that the defendant was at least negligent [2] in publishing [3] a *false* and defamatory statement to another [4] concerning the plaintiff, [5] which is either actionable without having to prove special harm (actionable per se) or actionable upon allegations and proof of special harm (actionable per quod)." Federal Credit, Inc. v. Fuller, 72 So.3d 5, 9-10 (Ala. 2011)(emphasis and brackets in original; citations and internal quotation marks omitted). Regarding plaintiff's allegations that defendant made defamatory statements about plaintiff to its other employees, defendant contends that plaintiff cannot establish the "publication" element of

his claim, because "any and all statements made by the dealership, to and among the employees, in conducting its investigation into the complaints received regarding the Plaintiff do not constitute publication[.]" (Defendant's brief, Doc. # 28, p. 20).

In Nelson v. Lapeyrouse Grain Corp., 534 So.2d 1085 (Ala. 1988), the Alabama Supreme Court discussed its *McDaniel/Burney*[4] "no publication" rule – *i.e.*, that communications between corporate managers or between fellow corporate employees concerning the corporation's business do not constitute "publication" for purposes of a defamation claim – and concluded that the defendant corporation's president's allegedly defamatory communications to employees during the course of investigating a theft from the corporation fell within the rule. Id. at 1093. The Alabama Supreme Court found it "irrelevant" that Brothers, the corporate officer, had communicated the plaintiff's involvement in the theft to Taylor, a non-managerial employee; the court stated that, "[a]s long as a communication to a non-managerial employee falls within the proper scope of that employee's knowledge or duties, the *McDaniel/Burney* rule applies to non-managerial employees as well as to managerial employees." Id. The court reasoned:

> Taylor worked with Nelson at the grain elevator, and it is reasonable to conclude that he might have had important information to disclose to Brothers as to the cause of the grain shortage. By taking part in the investigation, Taylor acted within the scope of his employment and within the line of his duties as a Lapeyrouse employee. Likewise, Brothers and Hall acted within the scope of their employment and within the line of their duties as corporate officers investigating a theft. Thus, Brothers's alleged defamatory communications to

[4] See McDaniel v. Crescent Motors, Inc., 31 So. 2d 343 (Ala. 1947); Burney v. Southern Ry. Co., 165 So.2d 726 (Ala. 1964).

> Hall and Taylor were not communications to third persons but to agents of Lapeyrouse and, therefore, were not publications. Lapeyrouse cannot be held liable solely on the basis of its alleged defamatory communications to itself.

Id. at 1094. In Burks v. Pickwick Hotel, 607 So.2d 187 (Ala. 1992), the court found the "no publication" rule to apply even in the absence of evidence that the defendant employer was a corporation. Id. at 189-90. The court upheld the entry of summary judgment in favor of the defendants, observing that the plaintiff had failed to present evidence to rebut the defendant hotel's showing that the allegedly defamatory communications were made only to its employees and "only to the extent necessary to investigate [the plaintiff's] employment behavior." Id. at 190; see also Nipper v. Variety Wholesalers, Inc., 638 So.2d 778, 781 (Ala. 1994)(finding no publication in loss prevention manager's questioning of the plaintiff's co-employees about her activities at the store, in the course of investigating hotline complaints and inventory loss).

Defendant's "no publication" argument is directed to its June 21, 2012, investigation into a charge that plaintiff had sexually harassed a former employee. (See Doc. # 28, p. 23). Defendant cites plaintiff's admission that "as a part of [defendant's] investigation of [the EEOC charge alleging sexual harassment by plaintiff filed by former employee Rebecca Nelson], Massey Automotive caused nine (9) employees, seven (7) of which were females, to be interviewed, on June 21, 2012." (Defendant's brief, Doc. # 28, p. 23 (citing defendant's Exhibit B, Admission No. 12 and Exhibits E and G (transcripts of sworn responses of Cornelia Messick and Diane Bush to interview questions posed to them by attorney John

Martin Galese))). Plaintiff appears to agree, as to defamatory statements allegedly made to defendant's employees, that the statements occurred in the context of the employee interviews on June 21, 2012. In his responsive brief, plaintiff argues that "the 'investigation' conducted by the Defendant needlessly included discussing the conduct of Mr. Redmon with other employees instead of simply acquiring information about him, constituting an attack on his character by imputed wrongdoing[,]" and he cites the sworn statements made by Diane Bush and Cornelia Messick and filed by the defendant in support of its motion for summary judgment. (See Plaintiff's response, Doc. # 35, pp. 7-8)(citing and discussing Defendant's Exhibits E and G). Galese conducted the employee interviews plaintiff cites on June 21, 2012 – the day on which defendant terminated plaintiff's employment. (See Defendant's Exhibits E, G (transcripts of sworn interviews conducted by Galese at Massey Automotive) and Exhibit J (plaintiff's EEOC charge)).

Plaintiff also has implied that his claim arises from defendant's defamatory statements to its employees *after* plaintiff's termination. (See Defendant's Exhibit A, Plaintiff's supplemental response to Interrogatory # 6 (identifying statements"that plaintiff *was terminated* for sexual harassment" to be the communications at issue)(emphasis added); Plaintiff's brief, Doc. # 35, at p. 9 (after indicating that defendant "communicated the defamatory statements to at least 8 female employees by soliciting affidavits from them[,]" arguing that "an employee who is asked to make a statement *about a terminated employee* feels intimidated and obligated to support their employer for fear that they will also be terminated")(emphasis added). Plaintiff's concluding argument could be understood to refer

either to Galese's statements during or in connection with the interviews of June 21, 2012, or to other unspecified communications made to solicit affidavits from employees after plaintiff filed his own charge of discrimination. (See Doc. # 35 at p. 11 (arguing that "the Defendant's defamatory communications were made with actual malice to shift the responsibility for any charges filed against it as a corporation onto Mr. Redmon" and that defendant "defamed Mr. Redmon by soliciting false statements from employees to support the termination and avoid responsibility for their actions").

Thus, it is not clear to the court from the pleadings, the evidence of record, or plaintiff's brief whether plaintiff's defamation claim – to the extent that it rests on communications to defendant's other employees – arises from statements Galese made to employees during or in connection with the interviews he conducted on the day of plaintiff's termination, or from other statements defendant made to its employees to solicit affidavits from them in support of its response to plaintiff's charge of discrimination. However, the court concludes, in either case, that the defendant has satisfied its initial burden on the present motion of informing the court of the basis for its motion (*i.e.*, that any statements it made to its own employees in investigating allegations that it had engaged in unlawful discrimination do not constitute a "publication," under Alabama law, a necessary element of plaintiff's defamation claim) and identifying those portions of the record that defendant contends demonstrate the absence of a genuine issue of material fact (in this case, by filing and pointing to plaintiff's admissions and interrogatory responses, the sworn statements of Bush and Messick, and Nelson's EEOC charge). See U.S. v. Four Parcels of Real Property,

941 F.2d 1428, 1437-38 and 1438 n. 19 (11th Cir. 1991)(where the non-movant will bear the burden of proof at trial, the moving party may meet its initial burden on summary judgment either with "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial" or by pointing out to the court, by reference to specific portions of the record, "'that there is an absence of evidence to support the nonmoving party's case'")(citations omitted); Defendant's brief, Doc. # 28, at pp. 19-23 and Exhibits A, B, E, F, and G). Thus, the burden on the present motion shifts to the plaintiff to direct the court to evidence of record demonstrating the existence of a genuine issue of fact regarding whether defendant made defamatory statements to its employees in specific circumstances that fall outside of the "no publication" rule as applied by Alabama Supreme Court. Plaintiff has not satisfied his burden on this issue.

The two interview transcripts which plaintiff cites do not permit a reasonable inference that Galese acted outside the scope of his agency with regard to any of his communications to the employees, as would be necessary to find that those communications are beyond the reach of the "no publication" rule. (See Defendant's Exhibits E and G (interview transcripts); Defendant's Exhibit B at ## 10-12 (plaintiff's admissions that former employee Rebecca Nelson filed a charge of discrimination with the EEOC on May 22, 2012, alleging that plaintiff had sexually harassed her, that Massey Automotive investigated the allegations contained in Nelson's charge, and that "as a part of its investigation of that Charge," Massey caused nine of its employees to be interviewed on June 21, 2012); Defendant's Exhibit F (Nelson's EEOC charge); see also Brackin v. Trimmier Law Firm, 897

So.2d 207, 221-23 (Ala. 2004)(the Alabama Credit Union Administration ("ACUA") had directed a credit union to engage an outside firm to investigate its practices; the Alabama Supreme Court concluded that the responses of credit union employees to questions posed to them by an outside auditor who was acting within the scope of her agency for the credit union "did not amount to 'publications' to a third party for purposes of establishing a defamation claim"; further finding no "publication" in the outside auditor's communication to the senior examiner of the ACUA regarding what the auditor had learned about plaintiff's activities); Watters v. Louisiana Pacific Corporation, 156 F. App'x. 177, 179 (11th Cir. 2005)(under Alabama law, "communications made to employees in the course of investigating the plaintiff's employment behavior do not constitute third-party publication for defamation purposes."). The only *evidence* plaintiff has filed in this action is his January 3, 2014 declaration (Doc. # 33-1), which he does not cite in his response to the present motion (see Doc. # 35).[5] Defendant's exhibits evidence no communications by defendant to its employees – through Galese or any other individual – other than Galese's communications during the transcribed interviews of Bush and Messick.[6] Thus, to the extent

[5] The declaration does not include evidence of particular communications published to defendant's employees; plaintiff states only that he "requested that [the insurance attorneys who came to the dealership to investigate the complaint of sexual harassment] interview all female employees, but they selected three[.]" (Doc. # 33-1, ¶¶ 23-24).

[6] While plaintiff cites his own deposition testimony as evidence that "Defendant communicated the defamatory statements to at least 8 female employees by soliciting affidavits from them" (see Doc. # 35, p. 9) he has not – as defendant points out in its reply brief (Doc. # 36, pp. 4-5) – filed a copy of his deposition transcript. Defendant's reply brief was filed on March 4, 2014, and, thus, plaintiff's counsel should have known on or around that date that she had failed to introduce plaintiff's deposition into the court's record. Plaintiff has not sought leave to file it out of time. Defendant argues that "even if [plaintiff] had [submitted his deposition to the court], it would not

that plaintiff's defamation claim rests on defendant's communications to its employees, defendant's motion for summary judgment is due to be granted.

*Communications to "Others"*

As noted above, plaintiff alleges that the defendant "made false and defammatory [sic] statements about Mr. Redmon to other employees of Massey Auto *and to others*." (Doc. # 1, ¶ 59)(emphasis added). In relation to the requirement that an actionable defamatory communication must concern the plaintiff, plaintiff argues "it is undisputed that the statements made to employees *and possibly customers and other business associates*, concerned Mr. Redmon." (Id. at pp. 9-10)(emphasis added). Plaintiff did not identify any defamatory statements made to "customers and other business associates" in his response to defendant's interrogatory (see Defendant's Exhibit A, Plaintiff's response to Interrogatory # 6), and it does not appear to the court that – merely by interjecting, by way of a single phrase in his responsive argument addressing an unrelated element of his claim, his speculation that defendant "possibly" made defamatory statements about him to "customers and other business associates" – plaintiff seeks to pursue a claim based on these

---

save his case from summary judgment." (Doc. # 36 at p. 4). It is unlikely that plaintiff's deposition testimony would provide *competent* evidence of any statements that defendant made to these "8 female employees." However – even if it might – the court declines to order, *sua sponte*, that plaintiff file his deposition transcript. Plaintiff's argument – *i.e.*, that defendant made the allegedly defamatory communications to its employees in connection with soliciting supportive affidavits from those employees regarding plaintiff's termination (Doc. # 35, p. 9) – makes clear that plaintiff's deposition testimony would not bear upon or overcome defendant's contention that the allegedly defamatory communications to its employees do not, as a matter of law, constitute "publications" giving rise to a defamation claim.

communications or to offer the possibility of such previously undisclosed defamatory communications in opposition to defendant's motion for summary judgment.[7] Accordingly, the court need not address any such "possibl[e]" defamatory communications in resolving the present motion.

In his interrogatory response, plaintiff indicates that "Statements were made ... to the EEOC that I was terminated for sexual harassment. This was published in the response submitted by the dealership to the EEOC complaint filed, in emails from the attorney for the dealership, and in the answer to the Complaint[.]" (Defendant's Exhibit A, Plaintiff's response to Interrogatory # 6 (original in bold type and italics); see also Defendant's Exhibit K, 10/31/2012 Galese's response to plaintiff's EEOC charge, on behalf of Massey Automotive, addressed to EEOC District Director[8]). Defendant asserts that any communications to the EEOC or to this court by Massey Auto, its counsel, or its witnesses regarding matters that are relevant to the proceedings are absolutely privileged under Alabama law. (Defendant's brief, Doc. # 28, pp. 23-25). Absolute privilege is an affirmative defense, on which defendant bears the burden of proof. See Webster v. Byrd, 494 So. 2d 31, 32 (Ala. 1986). Thus, to satisfy its initial burden on the present motion, defendant must

---

[7] Plaintiff does not suggest that he has ever supplemented his interrogatory response of August 8, 2013 (Defendant's Exhibit A) to include information about defamatory communications to "customers and other business associates." Thus, even if plaintiff sought to pursue a defamation claim based on these communications, evidence of any such communications would be subject to the exclusion sanction of Rule 37(c)(1). See Fed. R. Civ. P. 37(c)(1).

[8] Plaintiff raises no objection to the authenticity of this exhibit, which includes the statements on which plaintiff's defamation claim rests.

produce evidence demonstrating the absence of a genuine issue of material fact as to its defense – *i.e.*, it must show that no reasonable jury could find against it. Four Parcels of Real Property, 941 F.2d at 1438. If it does so, it is entitled to prevail on its motion for summary judgment as to plaintiff's defamation claims, unless the plaintiff responds with "'significant, probative evidence demonstrating the existence of a triable issue of fact." Id. (citation omitted).

Alabama recognizes an absolute privilege for communications made in connection with and relevant to a judicial proceeding. O'Barr v. Feist, 296 So.2d 152 (Ala. 1974). The absolute privilege extends to quasi-judicial proceedings (Webster, 494 So.2d at 34), and to relevant communications preliminary to a proposed judicial proceeding (Walker v. Majors, 496 So.2d 726 (Ala. 1986)).[9] Defendant has satisfied its summary judgment burden as to its defense of absolute privilege. In his interrogatory response, plaintiff identifies the defamatory statements at issue – *i.e.*, "that [he] was terminated for sexual harassment" – and the recipients of the communication – *i.e.*, "other employees" and, as is relevant to defendant's claim of absolute privilege in the present motion, "the EEOC." (Defendant's Exhibit A, #

---

[9] In Walker, the Alabama Supreme Court adopted the standard proposed in the *Restatement (Second) of Torts*, as follows:

> A party to a private litigation ... is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding.

496 So.2d at 729 (quoting *Restatement (Second) of Torts*, § 587 (1977); emphases omitted).

6).[10] Plaintiff further asserts publication of the defamatory statements "in the response submitted by the dealership to the EEOC complaint filed, in emails from the attorney for the dealership, and in the answer to the Complaint." Id. Plaintiff does not identify the individual recipients of defendant's attorney's e-mail communications; however, according to his interrogatory response, the attorney sent such communications to "other employees" (again, not a publication) and/or to "the EEOC." Id.

In his EEOC charge, plaintiff alleges that he was "terminated ... under the pretext of not following policy" and claims that defendant discriminated against him because of his age. (Defendant's Exhibit J). In the present action, plaintiff asserts a claim of age discrimination pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*. (Complaint, Doc. # 1, Count One), and alleges that "he has fulfilled all conditions precedent to the institution of this action under the ADEA ... by filing this charge of discrimination with 180 days of the occurrence of the last discriminatory act and filing this Complaint within 90 days of the receipt of the right to sue letter from the Equal Employment Opportunity Commission (EEOC) attached as Exhibit 1" (id. at pp. 1-2; see also Doc. 1-1 (EEOC notice). As plaintiff recognizes, "[t]he ADEA requires that an individual exhaust available administrative remedies by filing a charge of unlawful discrimination with the EEOC before

[10] In its reply brief, defendant suggests that it raised absolute privilege in its initial brief – in addition to lack of publication – as to the allegedly defamatory statements made to its employees. (Doc. # 36, pp. 8-9). The court cannot agree. In its initial brief, defendant argues only lack of publication as to communications to its employees (Doc. # 28, pp. 20-23) and absolute privilege as to statements made to the EEOC and in the course of the present litigation (id., pp. 23-25). Thus, the court does not address absolute privilege in relation to statements made to defendant's employees.

filing a lawsuit." Bost v. Federal Express Corp., 372 F.3d 1233, 1238 (11th Cir. 2004); see 29 U.S.C. § 626(d)(1)("No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission."). The court has found no Alabama Supreme Court decision addressing absolute privilege in the context of statements made in connection with administrative proceedings before the EEOC. However, applying Alabama precedent to the present context, the court concludes that Alabama's absolute privilege extends to statements that were made in connection with, and were relevant to, the administrative proceedings before the EEOC arising from plaintiff's charge of employment discrimination – both because such proceedings were "quasi-judicial," as contemplated by the Alabama Supreme Court in Webster, and because initiating such proceedings was a prerequisite to plaintiff's assertion of his ADEA claim in this court and, thus, any defensive statements made in connection with the EEOC's investigation of plaintiff's charge were necessarily "preliminary" to the present judicial proceeding. even more so than the preliminary statement found to be absolutely privileged in Walker. See Hatfield v. Bio-Medical Applications of Alabama, Inc., 2012 WL 4478769 (M.D. Ala. Sept. 4, 2012), *Report and Recommendation adopted*, 2012 WL 4471608 (M.D. Ala. Sept. 26, 2012)(holding that absolute privilege applied to statements in an employer's EEOC position statement because, "under Alabama law, pertinent statements made in the course of legal proceedings are absolutely privileged and cannot form the basis of a defamation claim.")(citing O'Barr, 292 Ala. at 445-46); cf. Surrency v. Harbison, 489 So.2d 1097 (Ala. 1986)(absolute privilege applied to allegedly

defamatory statements "made at a management-union grievance adjustment proceeding conducted pursuant to a collective bargaining agreement").[11]

It is beyond question that statements from defendant or its agents that plaintiff "was terminated for sexual harassment," published "to the EEOC" in defendant's response to the charge and/or in e-mails from its attorney, were made in the course of and were relevant to the EEOC administrative proceedings initiated upon plaintiff's charge of age discrimination. Thus, defendant's communications to the EEOC are absolutely privileged. See Walker, 496 So.2d at 730 ("[W]hether the communication was privileged or not by reason of its character, or the occasion on which it was made, is a question of law to be decided by the court. ... [T]he issue of the relevancy of the communication is a matter for the determination of the court, and the adjudicated cases have established a liberal view in the interpretation of the language used, and all doubts are resolved in favor of its relevancy or pertinence.")(citations

---

[11] Federal district courts in other states also have found absolute privilege, under applicable state law, to extend to communications relating to EEOC proceedings. See, *e.g.*, Shabazz v. PYA Monarch, LLC, 271 F. Supp.2d 797, 803-05 (E.D.Va. 2003)(concluding, in view of the EEOC's statutory responsibilities, the nature of the proceedings, the EEOC's subpoena power, and its power to file a lawsuit at the conclusion of its investigation, and the requirement to exhaust administrative remedies before the EEOC prior to filing an employment discrimination lawsuit, that such proceedings are "quasi-judicial" so as to implicate the absolute privilege accorded by Virginia law); Long v. Welch & Rushe, Inc., __ F.Supp.2d __, 2014 WL 2963975, *8 (D. Md. Jun. 30, 2014)(applying Maryland law and concluding that "[p]roceedings before the EEOC give rise to an absolute privilege"); Sparto v. Hearts for Hospice, LLC, 2014 WL 559536, *2 (D. Utah Feb. 13, 2014)(under Utah law, EEOC proceedings are "'judicial proceedings' for purposes of applying absolute privilege'"); Foster v. Select Medical Corporation, 2013 WL 764780, *7 (M.D. Fla. Feb. 28, 2013)(absolute privilege applies to EEOC investigations under Florida law); Collins v. Onyx Waste Services of North America, LLC, 2005 WL 3478347, *6 (M.D. Ga. Dec. 20, 2005)(finding EEOC proceedings to be quasi-judicial and Georgia's absolute privilege to apply to such proceedings).

omitted).[12]

In his interrogatory response, plaintiff asserts that defendant published the allegedly defamatory statement "that [he] was terminated for sexual harassment" in its "answer to the Complaint." While this response *could* refer to publication within the answer filed in this court (Doc. # 8), it is not clear that this is what plaintiff meant in his interrogatory response, since plaintiff refers to the EEOC charge as a "complaint[.]" (See Defendant's Exhibit A, # 6)("This was published in the response submitted by the dealership to the EEOC complaint filed in emails from the attorney for the dealership, and in the answer to the Complaint.")(original in italics and bold type). Also, there is no amended complaint in this action; therefore, simply as a matter of chronology, statements published in defendant's answer to the complaint cannot have given rise to the defamation claim that plaintiff asserts in his complaint. However, to the extent that plaintiff contends that he is entitled to relief for statements made by defendant or its agent "that [he] was terminated for sexual harassment[,]" published in the responsive pleading defendant has filed in this civil action (Doc. # 8), any such statements fall squarely within the absolute privilege Alabama accords to statements made in the course of judicial proceedings. See Walker, 496 So. at 730 ("In defamation actions, the only absolutely privileged communications recognized under the law are those

[12] It is difficult to ascertain from the pleadings, briefs, and evidence before the court whether plaintiff bases his defamation claim on statements made to the EEOC during its investigation of his own charge of age discrimination or on statements made to the EEOC in the course of its investigation of charges by other employees that plaintiff had sexually harassed them. In either event, statements published to the EEOC that plaintiff was terminated for sexual harassment are relevant to the proceedings and absolutely privileged.

made during legislative or judicial proceedings (or, in such situations as that dealt with in *Webster v. Byrd*, quasi-judicial proceedings), or contained in legislative acts of this state which are made under authority of law.").

Plaintiff's response to defendant's assertion of absolute privilege is limited to his contention regarding "actual malice." He argues:

> Mr. Redmon further submits that the Defendant's defamatory communications were made with actual malice to shift the responsibility for any charges filed against it as a corporation onto Mr. Redmon. Mr. Redmon presented sufficient evidence to create a conflict for the jury on the question of whether the Defendant made the communications with actual malice.

(Plaintiff's brief, p. 11). The issue of "actual malice," however, is immaterial to a defense of absolute privilege; even assuming that defendant made the statements at issue with actual malice, the statements remain absolutely privileged. See Adams v. Alabama Lime & Stone Corporation, 142 So. 424 (Ala. 1932)("'In questions falling within this absolute privilege the question of malice has no place. However malicious the intent, or however false the charge may have been, the law, from considerations of public policy, and to secure the unembarrassed and efficient administration of justice, denies to the defamed party any remedy through an action for libel or slander.'")(quoting Hastings v. Lusk, 22 Wend. (N.Y.) 410, 34 Am. Dec. 330 (1839) and observing that it "well and concisely stated" the rule adopted in Alabama). Defendant has established affirmatively that the remaining alleged communications to "others" – specifically, to the EEOC and to the court – are absolutely privileged. Thus, defendant's motion for summary judgment is due to be granted as to Counts

Three and Four of the complaint, plaintiff's defamation claims.

**Intentional Infliction of Emotional Distress**

"The intentional infliction of emotional distress is also known as the tort of outrage." Ex parte Bole, 103 So.3d 40, 52 (Ala. 2012). To establish a claim of outrage, "a plaintiff must demonstrate that the defendant's conduct '(1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it.'" Potts v. Hayes, 771 So.2d 462, 465 (Ala. 2000)(citation omitted). "Extreme" conduct is "conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." American Road Service Co. v. Inmon, 394 So.2d 361, 365 (Ala. 1980). In Count Five of his complaint, plaintiff claims that defendant is liable to him for intentional infliction of emotional distress. (Doc. # 1, pp. 6-7). He alleges that the defendant was aware of his age, and "wantoningly [sic] and knowlingly [sic] subjected Mr. Redmon to false accusations and wrongful termination." (Id., ¶¶ 73, 74). Plaintiff incorporates all previous allegations of his complaint, beginning with paragraph 7 (id., ¶ 72), including his allegation within Count Three that "[t]he Defendant's publication and speaking about Mr. Redmon allegedly sexually harassing a female employee is evidence of conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious *and* utterly intolerable in a civilized society" (id. ¶ 58).

Defendant contends that it is entitled to summary judgment because the undisputed facts "do not rise to the level of extreme and outrageous conduct on the part of the Defendant, as required to prove the tort of outrage." (Doc. # 28, p. 26; see id., pp. 25-29).[13] In its interrogatories, defendant asked that plaintiff "state each fact upon which you base your claim or contention that the Defendant's conduct was 'so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society[.]" (Defendant's Exhibit A, Interrogatory # 7). Plaintiff responds only that "[t]he accusations against me are outrageous and meant to cover up for the real reason I was terminated." (Id.).

Plaintiff has presented no competent evidence that the specific acts of sexual harassment alleged by Nelson and Messick did not occur.[14] The May 7, 2012 disciplinary warning filed by defendant, however, includes plaintiff's *unsworn* statement that he

---

[13] In his brief in opposition to the motion, plaintiff does not respond to defendant's contention regarding plaintiff's claim of intentional infliction of emotional distress. (See Doc. # 35). In its reply, defendant argues that, by failing to respond to its argument regarding this claim, plaintiff "has abandoned [it] and the Defendant is entitled to a judgment, as a matter of law, on said claim[]." (Doc. # 36, pp. 9-11). To the extent that defendant contends that this "abandonment" alone entitles it to judgment on the claim, binding Eleventh Circuit precedent is to the contrary. Trustees of the Central Pension Fund of the International Union of Operating Engineers and Participating Employers v. Wolf Crane Service, Inc., 374 F.3d 1035, 1039-40 (11th Cir. 2004); see Gailes v. Marengo County Sheriff's Dept., 916 F.Supp.2d 1238, 1241 n.6 (S.D. Ala. 2013)(observing that "[s]everal unpublished Eleventh Circuit decisions have deemed plaintiffs to have 'abandoned' claims by not responding to motions for summary judgment" but that those decisions fail to acknowledge Wolf Crane).

[14] In his declaration (Doc. # 33-1), plaintiff does not deny the specific acts of sexual harassment alleged in Nelson's EEOC charge, which Nelson signed under penalty of perjury (Defendant's Exhibit F) or in Messick's sworn statement (Defendant's Exhibit E).

"disagree[s] totally" with the employer's description of the violation of policy presented in the warning, *i.e.*, "SEXUAL HARASSMENT CLAIM MADE BY SUBORDINATE EMPLOYEE. INAPPROPRIATE COMMENTS AND TOUCHING CLAIMS." (Defendant's Exhibit D).[15] Plaintiff's sworn interrogatory response that the "accusations against [him] are *outrageous*" (Defendant's Exhibit A, #7 (emphasis added)) is conclusory. For purposes of this motion, the court infers from plaintiff's description of the accusations as "outrageous" that the accusations of sexual harassment are false. However, plaintiff admits that Nelson filed a charge of discrimination with the EEOC, that defendant investigated the allegations in Nelson's charge and that, as part of that investigation, several of defendant's employees were interviewed. (Defendant's Exhibit B, ¶¶ 10-12). Additionally, it is undisputed that, during the interviews on June 21, 2012, Messick reported that plaintiff had harassed her (Defendant's Exhibit E) and Bush reported that she had observed plaintiff behave inappropriately with two female customers in one day but had never seen him do so with other employees (Defendant's Exhibit G). Plaintiff states that Mr. Massey terminated his employment and that plaintiff "asked why [he] was being terminated, but was never given a reason" until, "[a]fter three weeks, two emails and a call from [his] attorney, [he] received a letter indicating that [he] was terminated for 'breaking company policy[.]'" (Plaintiff's declaration, ¶¶ 25-26). The evidence that Massey refused to give plaintiff a reason for his termination and that Bush did not observe plaintiff behave

[15] According to defendant's response to the EEOC, the May 7, 2012 disciplinary warning resulted from a complaint made by Nelson. (Defendant's Exhibit K, p. 2 n. 1).

inappropriately toward other employees does not permit a reasonable inference that Massey knew that the allegations regarding plaintiff's conduct were fabricated, or even that Massey did not believe his employees' statements. Thus, as to the allegations of sexual harassment made by defendant's employees, the evidence of record – viewed in the light most favorable to plaintiff – permits an inference that the accusations defendant received about plaintiff's conduct were false, but does not permit a reasonable inference that Massey knew them to be false.

Defendant concedes that the undisputed facts establish a *prima facie* case of discrimination on the basis of his age as to plaintiff's termination. See Doc. # 28, p. 13 ("[I]t is undisputed that the Plaintiff is over the age of forty, that he was qualified for the position he held, that Massey Auto terminated his employment and that he was replaced by a younger individual[.]"); id. at p. 11 (stating elements of *prima facie* case); see also Doc. # 33-1, plaintiff's declaration, ¶¶ 1-6, 25-27. A *prima facie* case of termination because of age includes, by definition, evidence of facts "from which a fact finder could reasonably conclude that the employer intended to discriminate on the basis of age." Corbin v. Southland International Trucks, 25 F.3d 1545, 1549 (11th Cir. 1994).

Thus, drawing all reasonable inferences in plaintiff's favor, his outrage claim rests on the following circumstances: (1) Nelson and Messick falsely reported that plaintiff had sexually harassed them; (2) Bush falsely reported that she had seen plaintiff behave inappropriately with two female customers but also reported truthfully that she had not seen

him do so with employees; (3) Massey – who may or may not have believed or known the reports to be false – terminated plaintiff's employment with the intent to discriminate against him due to his age, and without giving him a reason; and (4) defendant made statements to its employees[16] that plaintiff was terminated for sexual harassment. The court concludes that these circumstances are not sufficiently outrageous and extreme to support a claim of intentional infliction of emotional distress under Alabama law. See Inmon, 394 So.2d at 367-68 (finding that employer's behavior was not, as a matter of law, sufficiently outrageous in character and extreme in degree to support a claim for intentional infliction of emotional distress; plaintiff's evidence "showed that he had been harassed, investigated without cause, humiliated, accused of improper dealings, treated uncustomarily, and terminated without justification[,]" and his honesty was questioned). A termination of employment motivated by unlawful animus may, in sufficiently egregious circumstances, give rise to an outrage claim; however, this is not such a case. Compare Rice v. United Ins. Co. of America, 465 So.2d 1100, 1102 (Ala. 1985)(reversing dismissal of outrage claim for failure to state a claim; plaintiff "allege[d] a *pattern* of activity, encompassing a period of several months[,]"

[16] As discussed above, defendant has established that its statements to the EEOC and to this court are absolutely privileged. Therefore, under Alabama law, these statements cannot give rise to defendant's tort liability. See Butler v. Town of Argo, 871 So.2d 1, 23-25 (Ala. 2003)(holding that allegedly false and defamatory statements made by the defendant were absolutely privileged as to the plaintiff's defamation *and* invasion of privacy claims); Drees v. Turner, 45 So. 3d 350, 358-59 (Ala. Civ. App. 2010)(Absolutely privileged statements, no matter how false or malicious, cannot be made the basis of civil liability. That rule applies equally to claims other than those based on defamation. ... [A] claim for civil damages may not rest on pertinent statements made in the course of judicial proceedings.")(citations omitted); see also Inmon, 394 So.2d at 365 (tort of outrage "applies only to *unprivileged*, intentional or reckless conduct of an extreme and outrageous nature, and only that which causes severe emotional distress")(emphasis added).

the alleged behavior "involved a great many persons ([plaintiff's] co-workers, clients, and husband) in addition to [plaintiff] and the defendants[,]" defendants' "alleged pattern of outrageous acts were directed toward plaintiff when [the defendant supervisor] was likely to know that severe emotional distress could have serious physical repercussions[,]" and defendants' actions "were directed toward an illegal purpose, discrimination against an employee because of sex")(emphasis in original); and McIsaac v. WZEW-FM Corp., 495 So.2d 649, 651 (Ala. 1986)(affirming summary judgment against plaintiff on outrage claim; holding that plaintiff "failed to establish any evidence of extreme and outrageous conduct" despite evidence that the defendant corporation's owner/president made personal advances toward the plaintiff over a three-month period (including asking her to have an affair with him, trying to kiss her, giving her suggestive looks, and touching her) and pressured the station manager to dismiss her because she had rejected his sexual advances, resulting in termination of her employment); see also Buzbee v. Alabama Waste Services, Inc., 709 So.2d 61 (Ala. Civ. App. 1998)(reversing summary judgment in favor of employer as to plaintiff's claim that employer discharged him in retaliation for filing a workers' compensation claim but affirming it as to his outrage claim); King v. CVS Caremark Corp., __ F. Supp.2d __, 2014 WL 868079, **5-8, 19-20 (N.D. Ala. Mar. 5, 2014)(denying summary judgment on plaintiff's ADEA/AADEA termination claims, but granting summary judgment on outrage claim arising from the defendants' "cumulative negative treatment" of the plaintiff, including his supervisor's numerous "retirement-related" comments to the plaintiff during the period from "late 2010" through September 20, 2011; noting that "to the extent that the Supreme

Court of Alabama has found [an outrage] claim to be appropriate in an employment-related lawsuit, such circumstances have been confined to situations involving egregious harassment"); Walker v. ITT Educational Services, Inc., 2013 WL 979087, **3-4 (N.D. Ala. Mar. 13, 2013)(claim that alleged a termination in violation of the FMLA failed to state an outrage claim, as it included no allegations of an "onslaught of harassment" or other "extreme and outrageous" circumstances); Estate of Reed v. Ponder Enterprises, Inc., 2012 WL 1031487, **7-8 (M.D. Ala. Mar. 27, 2012)("Although the Estate alleges that the Defendants were willfully malicious, the alleged conduct does not rise to the level of outrageousness that will support a claim for intentional infliction of emotional distress under Alabama law. In fact, if the tort of outrage were recognized under the circumstances alleged in this case, it would mean that the tort of outrage would exist in every ADA case when an employer intentionally discriminates or retaliates against a disabled employee – a result not consistent with the 'extremely limited' nature of the tort of outrage in Alabama."). Accordingly, defendant is entitled to summary judgment as to Count Five, plaintiff's claim of intentional infliction of emotional distress.

**Age Discrimination Claims**

Under the Age Discrimination in Employment Act ("ADEA"), it is unlawful for an employer to discriminate against an employee who is at least forty years old because of his or her age. 29 U.S.C. §§ 623(a)(1), 631(a). Such conduct is also prohibited by the Alabama

Age Discrimination in Employment Act ("AADEA"). Ala. Code, §§ 25-1-20, *et seq.*[17] In Counts One and Two, plaintiff claims that defendant is liable to him under the ADEA and AADEA for terminating his employment because of his age. The McDonnell Douglas/Burdine[18] framework was established by the Supreme Court for evaluating a Title VII plaintiff's claims of discrimination against an employer where, as here, there is no direct evidence of discrimination. See Combs v. Plantation Patterns, 106 F.3d 1519, 1527-28 (11th Cir. 1997). This analytical framework also applies to claims of age discrimination under the ADEA and AADEA. Sims v. MVM, Inc., 704 F.3d 1327, 1332-33 (11th Cir. 2013); Kragor v. Takeda Pharmaceuticals America, Inc., 702 F.3d 1304, 1308 (11th Cir. 2012); Robinson v. Alabama Central Credit Union, 964 So.2d 1225, 1228-29 (Ala. 2007). If the plaintiff establishes a *prima facie* case of discrimination, the "burden shifts to the employer to rebut the presumption of discrimination with evidence of a legitimate, nondiscriminatory reason

---

[17] The AADEA's prohibitions and authorizations of employment practices mirror those of the ADEA. AADEA and ADEA claims are substantially the same, except that the former does not require exhaustion of administrative remedies. See Howard v. Steris Corp., 886 F.Supp.2d 1279, 1298 (M.D. Ala. 2012)("Because the [ADEA and AADEA] are nearly identical, the Court will apply the same standards to both claims."); Ala. Code, § 25-1-29. The AADEA provides that a plaintiff is entitled to but "one recovery of damages." Ala. Code, § 25-1-20, *et seq*. Defendant urges the court to dismiss plaintiff's AADEA claim as "duplicative" of his ADEA claim. The Alabama statute can be interpreted to require a plaintiff to elect between pursuing an age discrimination claim under ADEA or doing so pursuant to the AADEA (see Collins v. Compass Group, Inc., 965 F.Supp.2d 1321, 1329-31 (N.D. Ala. 2013)); however, read as a whole, the "[e]lection of remedies" provision of the AADEA appears to be directed to the issue of duplicative federal and state age discrimination lawsuits. It does not appear to contemplate or address a plaintiff's pursuit of ADEA and AADEA claims in the same lawsuit. See Ala. Code, § 25-1-29; Wallace v. Jim Walter Homes, Inc., 68 F.Supp.2d 1303 (M.D. Ala. 1999). Thus, the court declines to dismiss plaintiff's AADEA claim as duplicative of his ADEA claim.

[18] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973);Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981).

for the adverse employment action." Kragor, 702 F.3d at 1308. "If the employer meets its burden of production, the presumption of discrimination raised by the plaintiff's *prima facie* case is rebutted and thus disappears. Once the presumption of discrimination is rebutted, the inquiry proceeds to a new level of specificity, whereby the plaintiff must show the employer's proffered reason to be a pretext for unlawful discrimination." Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1325-26 (11th Cir. 2011)(citations and internal quotation marks omitted).

As noted above, defendant concedes the existence of a *prima facie* case of age discrimination. (Defendant's brief, Doc. # 28, pp. 11, 13). It contends that it is entitled to summary judgment, however, because plaintiff cannot establish that the legitimate, nondiscriminatory reason it has articulated (*i.e.*, that it terminated plaintiff's employment as a result of Nelson's sexual harassment charge and information it obtained about other instances of inappropriate conduct in the course of investigating that EEOC charge) is pretextual. (Id., pp. 13-18). As is also noted above in connection with plaintiff's outrage claim, the evidence presently of record is not sufficient to permit a reasonable inference that Mr. Massey – the person who, according to the plaintiff, terminated his employment[19] – knew the allegations of sexual harassment to be false.

However, defendant – which bears the burden of production on the present motion as

---

[19] Defendant requested that plaintiff admit "that [he was] terminated by Joey Langley." (Defendant's Exhibit B, # 14). Plaintiff denied the assertion. (Id.). Thus, it appears that defendant may contend that the actual decisionmaker was Langley, not Massey.

to its nondiscriminatory reason(s) for the adverse employment decision – has failed to introduce evidence that is sufficient to rebut the presumption of discrimination arising from plaintiff's *prima facie* case. Defendant has submitted evidence of misconduct by the plaintiff that might well have motivated Mr. Massey (or the actual decisionmaker, if not Mr. Massey) to fire the plaintiff (Exhibits E, F, G), as well as evidence that its attorney reported to the EEOC on its behalf that plaintiff "was terminated because Massey Automotive had a reasonable belief that he violated the company's anti-harassment policy" (Exhibit K).[20] It has not, however, provided the court with competent evidence that the accusations of sexual harassment actually motivated the decisionmaker to fire the plaintiff. "If there [is] no evidence that asserted reasons for discharge were actually relied on, the reasons are not sufficient to meet defendant's rebuttal burden." Lee v. Russell County Board of Education, 684 F.2d 769, 775 (11th Cir. 1982); see also Walker v. Mortham, 158 F.3d 1177, 1184 (11th Cir. 1998)("Although this burden [of production] is not 'onerous,' neither is it a mere formality. ...'[T]he defendant must clearly set forth, through the introduction of admissible evidence' the reason for its adverse employment decision[.]")(citing Burdine, 450 U.S. at 253, 255); id. at 1181 n. 8 ("Our precedent requires that if a defendant raises as its legitimate, nondiscriminatory reason relative qualifications of the applicants, the defendant 'must include the fact that the decision-maker knew that the promoted individual's qualifications

[20] In defendant's response to plaintiff's EEOC charge, Galese does not identify the person (or persons) who made the termination decision at issue. See Defendant's Exhibit K, p. 2 ("As a result of Mr. Nelson's charge and the information obtained from Ms. Messick and Ms. Bush, who were deemed to be credible, Massey Automotive made the decision to terminate Mr. Redmon.").

were superior at the time the decision was made.' ... The defendant cannot testify in abstract terms as to what might have motivated the decision-maker; *it must present specific evidence regarding the decision-maker's actual motivations* with regard to each challenged employment decision.")(citations omitted; emphasis added); Turnes v. AmSouth Bank, NA, 36 F.3d 1057, 1061 (11th Cir. 1994)("[A]lthough it is true that the employer need not *prove* it was actually motivated by the proffered reason, Burdine clearly does not relieve the employer from *producing* a reason that was available to it at the time of the decision's making. Moreover, this Court has squarely held that an employer may not satisfy its burden of production by offering a justification which the employer either did not know or did not consider at the time the decision was made.")(emphasis in original); Increase Minority Participation by Affirmative Change Today of Norwest Florida, Inc. (IMPACT) v. Firestone, 893 F.2d 1189, 1195 n. 5 (11th Cir. 1990)(Burdine requires, as to the employer's legitimate reason, "evidence of a sort that will give a fair opportunity to cross-examine the defendant's witnesses as to the actual reason which is testified to.")(citation omitted).[21]

[21] In Turner v. Kansas City Southern Ry. Co., 675 F.3d 887, 902 (5th Cir. 2012), the Fifth Circuit found evidence similar in nature to defendant's evidence in this case to be insufficient to discharge the employer's rebuttal burden. See id. at 903 ("KCSR then cites Turner's and Thomas' discharge letters, which it says 'set forth the grounds on which the Charging Parties were disciplined.' Although the discharge letters state that Turner and Thomas were found to have violated certain workplace rules, they do not provide any reason for *Thornell's* decisions to dismiss these employees: The letters are not signed by Thornell; they do not mention the employees' disciplinary histories; and they do not give any indication that they reflect Thornell's reason for choosing to dismiss the employees, as opposed to merely suspending them.")(citation to brief omitted; emphasis in original); id. at 903-04 ("KCSR next cites '[t]he transcripts of the investigative hearings,' which again, it asserts 'set forth the grounds on which discipline was decided.' However, the hundreds of pages of transcripts that KCSR cites discuss only the circumstances of the incidents in which Turner, Frank and Cargo were involved ... The transcripts do not, as KCSR asserts, include any reason for why the particular disciplinary decisions were made.")(citation to brief omitted).

Because defendant has not satisfied its burden of production, it has failed to rebut the presumption of age discrimination raised by plaintiff's *prima facie* case and, thus, it is not entitled to summary judgment on plaintiff's ADEA and AADEA claims. See Turnes, 36 F.3d at 1061 ("[W]here a plaintiff's prima facie case is established, but the employer *fails* to meet its burden of production, the unrebutted presumption of discrimination stands.")(emphasis in original).

**CONCLUSION**

For the foregoing reasons, it is

ORDERED that defendant's motion for summary judgment (Doc. # 27) is GRANTED as to Counts Three, Four, and Five of the Complaint (plaintiff's state law defamation and outrage claims) and DENIED as to Counts One and Two (plaintiff's ADEA and AADEA claims).

DONE, this 29th day of September, 2014.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE